UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM COONROD,

                Petitioner,            Civil No. 07-12844
                                            Honorable David M. Lawson

v.

HUGH WOLFENBARGER,

                Respondent.

_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

      The petitioner, William Coonrod, confined at the Macomb Correctional Facility in New Haven, Michigan, has filed through counsel a petition for a writ of habeas corpus under 28 U.S.C. § 2254. A Kent County, Michigan jury convicted the petitioner of two counts of second-degree criminal sexual conduct, and he was sentenced as a fourth felony habitual offender to fourteen to fifty years in prison. The petitioner alleges that he was denied effective assistance of trial counsel; his Sixth Amendment confrontation right was violated and the Michigan Court of Appeals improperly ruled that he waived that right; he was denied a fair trial by the admission of highly inflammatory police testimony; and the state trial court enhanced his sentence on the basis of facts that had not been submitted to a jury and proven beyond a reasonable doubt or admitted by him. The respondent has filed an answer to the petition, asserting that the claims are procedurally defaulted or lack merit. The Court agrees that petitioner's claims are meritless and therefore will deny his petition.

I.

The Michigan Court of Appeals summarized the facts established at trial, which are presumed correct on habeas review, *see Monroe v. Smith*, 197 F. Supp. 2d 753, 758 (E.D. Mich. 2001), as follows:

> Defendant and his wife, Sue, were neighbors of the eight-year-old victim and her mother. The victim's mother often babysat for defendant's son, and there was some indication that the victim's mother and defendant were having an affair. The evidence indicated that at some point, defendant began inappropriately touching and kissing the victim. The victim's mother suspected that defendant was acting inappropriately towards the victim and occasionally tried to confront defendant about her suspicions. However, many of the allegations went unreported.
>
> Defendant's convictions arose from two instances in which he allegedly touched the victim's vaginal area. The first charged offense occurred when the victim and her neighborhood friend were playing in defendant's sprinkler. After they finished playing, defendant rubbed the victim's vaginal area over her swimsuit bottom. The second charged offense occurred when defendant spent the night at the victim's mother's home. When the victim was sleeping, defendant lay down next to her and rubbed her vaginal area. The victim awoke, ran to her mother, and reported the incident. The victim's mother confronted defendant, and this resulted in a heated exchange of words. She reported this incident to the police, and an investigation by Cedar Springs Police Department Officer Amy Brondyke ensued.

*People v. Coonrod,* No. 258726, 2006 WL 1290871, at *1 (Mich. Ct. App. May 11, 2006).

During cross-examination of investigator Brondyke, information about sexual assault of a different child came out, and on redirect examination the investigator was allowed to elaborate on the matter. Issues relating to that testimony were raised on direct appeal and here in this Court.

After conviction and sentence, the petitioner filed a post-conviction motion raising the issue of ineffective assistance of counsel. After a three-day evidentiary hearing, the trial court denied relief. The petitioner then filed a direct appeal in the Michigan Court of Appeals, arguing that his rights under the Confrontation Clause were violated, his trial counsel was ineffective in several respects, the trial judge committed several evidentiary errors, and he was sentenced on the basis of fact that had not been determined by a jury or admitted by him. The court of appeals affirmed his

convictions and sentence, and the state supreme court denied leave to appeal. *People v. Coonrod*, 477 Mich. 940, 723 N.W.2d 817 (2006). The petitioner timely filed his federal habeas petition, asserting the following grounds for relief:

I.  Petitioner had ineffective assistance of trial counsel.

II.  Petitioner was denied his Sixth Amendment right of confrontation by the admission of certain police officer testimony.

III.  The Michigan courts improperly held that petitioner had "waived" his right of confrontation by "opening the door" to certain testimony.

IV.  Petitioner was deprived of a fair trial by the admission of highly inflammatory police testimony.

V.  Petitioner was deprived of his Sixth Amendment right to a jury trial and his Fourteenth Amendment right of due process when the trial court enhanced his sentence on the basis of facts not found by the jury.

Pet. at 3-5.

The respondent opposes the petition, contending that the petitioner's claims are either procedurally defaulted or lack merit and therefore do not warrant habeas relief.

## II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering applications for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003).

As amended, 28 U.S.C. § 2254(d) permits a federal court to issue the writ only if the state court decision on a federal issue "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or it amounted to "an

unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) & (2); *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (internal quotes omitted)). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .

> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409. The Court has "explained that an unreasonable application of federal law is different from an incorrect

application of federal law. Indeed, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must be objectively unreasonable. This distinction creates a substantially higher threshold for obtaining relief than *de novo* review. AEDPA thus imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, --- U.S. ---, ---,130 S. Ct. 1855, 1862, 1864-65 (2010) (finding that the state court's rapid declaration of a mistrial on grounds of jury deadlock was not unreasonable even where "the jury only deliberated for four hours, its notes were arguably ambiguous, the trial judge's initial question to the foreperson was imprecise, and the judge neither asked for elaboration of the foreperson's answers nor took any other measures to confirm the foreperson's prediction that a unanimous verdict would not be reached") (internal quotation marks and citations omitted); *see also Knowles v. Mirzayance*, --- U.S. ---, ---, 129 S. Ct. 1411, 1419 (2009) (noting that the Supreme "Court has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam)); *Phillips v. Bradshaw*, 607 F.3d 199, 205 (6th Cir. 2010); *Murphy v. Ohio*, 551 F.3d 485, 493-94 (6th Cir. 2009); *Eady v. Morgan*, 515 F.3d 587, 594-95 (6th Cir. 2008); *Davis v. Coyle*, 475 F.3d 761, 766-67 (6th Cir. 2007); *King v. Bobby*, 433 F.3d 483, 489 (6th Cir. 2006); *Rockwell v. Yukins*, 341 F.3d 507, 512 (6th Cir. 2003) (en banc).

A.

The petitioner's first claim — that his trial counsel was constitutionally ineffective — is based on several decisions his lawyer made at trial concerning the choice of witnesses to call, cross-examination strategy, trial preparation, and whether to offer certain exhibits. Following his convictions, the petitioner moved for a new trial; as noted earlier, the trial court judge conducted a hearing that lasted for over three days, and eventually denied the petitioner's motion for new trial. The state court of appeals determined that all of trial counsel's decisions fell within a reasonable range of choices that competent counsel might make, and it refused to second guess the petitioner's lawyer. That determination was not an unreasonable application of governing Supreme Court precedent.

The two part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), governs the Court's analysis of ineffective-assistance-of-counsel claims. *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). To show a violation of the Sixth Amendment right to effective assistance of counsel, a petitioner must establish that his attorney's performance was deficient and the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id*. at 687-88. The defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689.

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687. The defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to

undermine confidence in the outcome." *Id.* at 694. "Unless a defendant makes both showings [i.e., deficient performance and resulting prejudice], it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687.

As a general rule, trial counsel's strategic decisions on how the trial is to be conducted are afforded great deference. As the Supreme Court explained:

> It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Strickland*, 466 U.S. at 689 (internal quotes and citations omitted). "[A] lawyer's acts and omissions must be judged on the basis of what he knew, or should have known, at the time his tactical choices were made and implemented." *Ouber v. Guarino*, 293 F.3d 19, 25 (1st Cir. 2002) (citing *Bell v. Cone*, 535 U.S. 685 (2002)). It is equally true that "errors of tactics or omission do not necessarily mean that counsel has functioned in a constitutionally deficient manner." *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001).

Of course, the determination that trial counsel's ill-conceived choices amount to trial strategy does not insulate them from habeas review. "Strategic" choices that have no hope of succeeding, are made without adequate investigation or preparation, or actually imperil the defendant's case cannot be considered "sound." A "decision . . . cannot be accord[ed] the normal deference to strategic choices [where] it was uninformed." *Rolan v. Vaughn*, 445 F.3d 671, 682 (3d Cir. 2006).

Other "strategic" choices by counsel, such as the failure to object to obviously tainted and inadmissible evidence, *Ege v. Yukins*, 485 F.3d 364, 378-79 (6th Cir. 2007), and the failure to cross-examine a key prosecution witness, *Higgins v. Renico*, 362 F. Supp. 2d 904, 916-17 (E.D. Mich. 2005), have been found to be so unsound as to negate the finding that counsel's performance tracked "prevailing professional norms." *Wiggins*, 539 U.S. at 521.

Moreover, "[o]nly choices made after a reasonable investigation of the factual scenario are entitled to a presumption of validity." *Rolan*, 445 F.3d at 682 (citation omitted). An obviously defective choice is "not a reasonable strategic decision entitled to deference." *Moss v. Hofbauer*, 286 F.3d 851, 865 (6th Cir. 2002) (finding that defense counsel's reliance on the cross-examination of an eyewitness by a co-defendant unreasonable when the two defendants' interests were not aligned). As the Seventh Circuit has put it:

> [I]f as in this case there is only one argument that could be made on the defendant's behalf, and it is not frivolous, the lawyer may have a professional obligation to make it. *Keys v. Duckworth*, 761 F.2d 390, 392 (7th Cir. 1985) (per curiam); *cf. Fortenberry v. Haley*, 297 F.3d 1213, 1226-27 (11th Cir. 2002) (per curiam); *Tejeda v. Dubois*, 142 F.3d 18, 25 (1st Cir. 1998). It is not suggested that Rezin's lawyer had a tactical reason not to make the argument that we are about to examine; he could not have, since he had no other basis for knocking five years off his client's sentence. "The spectrum of counsel's legitimate tactical choices does not include abandoning a client's only defense." *United States ex rel. Barnard v. Lane*, 819 F.2d 798, 805 (7th Cir. 1987). There was nothing to lose and something to gain, though only in a probabilistic sense, from making the argument.

*United States v. Rezin*, 322 F.3d 443, 446 (7th Cir. 2003).

With these basic rules in mind, the Court turns to the petitioner's specific claims.

### 1.

The petitioner first argues that trial counsel failed to prepare for trial, investigate, and present material evidence; he says his lawyer did not review summaries and notes that he had asked the

petitioner and his wife to prepare. However, trial counsel testified at the post-conviction hearing that he had read those case summaries. The trial court judge credited that testimony and found that counsel had read all of the case notes. Tr., May 27, 2005, at 34. The court of appeals likewise rejected the petitioner's claim on appeal, deferring to the trial court's credibility determination that counsel had read these documents prior to trial. *Coonrod*, 2006 WL 1290871, at *4.

Although the ultimate question of ineffective assistance of counsel is a mixed question of law and fact, the factual findings of state courts enjoy the presumption of correctness in federal habeas proceedings. *See Abdur'Rahman v. Bell*, 226 F.3d 696, 702 (6th Cir. 2000). In order to overcome this presumption, a habeas petitioner must either show that the record as a whole did not support the factual determination or must prove by clear and convincing evidence that the factual determination was erroneous. *See Poole v. Perini*, 659 F.2d 730, 736 (6th Cir. 1981). The petitioner has not done so here.

The petitioner also contends that trial counsel was ineffective because he met with the petitioner on no more than four occasions for one to one-and-a-half hours each time, even though counsel testified that he met with the petitioner from six to twelve times for one to two-and-a-half hours each time. The amount of trial preparation required depends on the complexity of the case; there is no constitutionally prescribed minimum time. Accepting the petitioner's version would not require habeas relief because the petitioner has not shown how additional consultation with his lawyer could have changed the outcome of the trial. *See Bowling v. Parker,* 344 F. 3d 487, 506 (6th Cir. 2003) (trial attorneys' alleged failure to consult with the defendant in a capital murder case did not prejudice the defendant and thus could not amount to ineffective assistance, although attorneys allegedly met with the defendant for less than one hour in preparing defense, where the defendant

failed to show how additional consultation with his attorneys could have altered outcome of the trial).

The petitioner next contends that counsel was ineffective for failing to call his wife, Susan Coonrod, to testify that nothing improper had happened between the petitioner and the victim during the "sprinkler incident" and during an uncharged "computer incident," both of which Mrs. Coonrod observed. The petitioner also complains that his lawyer should have call the petitioner's mother, Frances Coonrod, to speak about the content of a tape-recorded conversation between herself, the victim, Felicia Miles, and the victim's mother, Joyce Mazey. According to the petitioner, this testimony would establish that the victim's mother had coerced her into saying that the petitioner had touched her.

In rejecting this claim, the trial judge noted that he had reviewed the written statements that had been provided to defense counsel, as well as the statement that Susan Coonrod claimed was on the tape. In both these statements, Mrs. Coonrod told the victim's mother that her husband would not engage in that type of activity. Testimony along those lines would have amounted to character evidence, which is permitted by Michigan evidence law. *See* Mich. R. Evid. 404(a)(1) (allowing "[e]vidence of a pertinent trait of character offered by an accused" to prove action in conformity therewith). However, as the trial judge noted, had either the petitioner's wife or mother testified at trial on that subject, the prosecutor could have cross-examined them by asking about the petitioner's two prior criminal sexual conduct convictions involving children. *See* Mich. R. Evid. 405(a) ("On cross-examination, inquiry is allowable into reports of relevant specific instances of conduct."). The trial judge further noted that as the petitioner's wife, Susan Coonrod's testimony, while not "inherently incredible for that reason, doesn't carry a great deal of weight." Tr., May 27, 2005, at

21. The judge further observed that it would have been "easy to defuse" Susan Coonrod's testimony about the "sprinkler incident" by pointing out that it was "extremely unlikely that in a prolonged incident like that , she would have been watching the girls so intently that she would have seen everything." *Id.* at 20-21. On appeal, the court of appeals found the petitioner's counsel had concluded that neither the petitioner's wife nor his mother would be an appropriate witness because they would be trapped into providing testimony regarding the petitioner's prior convictions for sexual misconduct. The court of appeals concluded that counsel had provided a valid strategic reason for choosing not to have these women testify. *Coonrod* 2006 WL 1290871, at *4.

The state courts' rejection of the petitioner's claim was a reasonable application of *Strickland*. The strategic choices made by trial counsel were sound and amounted to a reasonable choice after weighing the pros and cons of the alternatives available. Those decisions are precisely the kind that *Strickland* forbids second-guessing. Trial counsel cannot be called ineffective for not calling these two women as witnesses. *See, e.g., Mason v. Mitchell,* 320 F.3d 604, 625-27 (6th Cir. 2003) (holding that counsel's decision not to call a psychiatrist to testify about the lack of propensity on the defendant's part to be a repeat violent offender was justified, given that the psychiatrist's testimony would have opened the door to rebuttal testimony regarding the defendant's history of violent criminal conduct).

Next, the petitioner alleges that trial counsel was ineffective for failing to introduce into evidence a Super 8 Motel receipt that purportedly provided the petitioner with an alibi in relation to the second incident. the receipt would have shown that the petitioner stayed at that hotel on the night of November 5-6, 2003, when the victim claimed he touched her. Kimberly Mendels, a

medical social worker, testified that the victim had informed her that she had been molested by the petitioner "last Wednesday," which was November 5, 2003.

In rejecting this claim, the trial judge stated that the evidence at trial established that the second sexual assault took place either late on the evening of November 4 or in the early morning hours of November 5, which was 24 hours *before* the date on the Super 8 Motel receipt. The judge also noted that the petitioner himself admitted being in the victim's trailer on the night of the last incident. Tr., May 27, 2005, at 26-27. Likewise, in rejecting this claim on appeal, the court of appeals wrote that trial counsel had concluded that the Super 8 Motel receipt did not provide an effective alibi for the petitioner and would have given "the prosecution the opportunity to again remind the jury, in the course of expert testimony concerning how young children often get dates confused, of the victim's allegations." *Coonrod,* 2006 WL 1290871, at *4. The court of appeals concluded that trial counsel did not introduce the receipt for tactical reasons, so the trial court did not err in concluding that counsel was not ineffective when he decided not to offer the receipt into evidence.

A lawyer has no obligation to present evidence or testimony that would not have exculpated the defendant. *See Millender v. Adams,* 376 F.3d 520, 526-27 (6th Cir. 2004). The petitioner's whereabouts on the day after the crime "are not exculpatory points." *Id.* at 527. In *Millender,* the Sixth Circuit held that defense counsel's failure to call a witness who stated that he saw the petitioner out of state "the Sunday before" the Monday the crime occurred was not ineffective assistance of counsel because evidence of the petitioner's movements on the day before the crime was not exculpatory. Similarly, evidence of the petitioner's whereabouts on the night after the

second sexual assault had taken place would not have been exculpatory. No deficient performance can be found in counsel's withholding the Super 8 motel receipt from the trial record.

Finally, the petitioner alleges that counsel was ineffective for losing a tape recording of the victim's mother, Joyce Mazey, screaming at the victim in front of Susan Coonrod to "[t]ell her he touched you." According to the petitioner, this tape would have shown that the victim had been coerced by her mother into bringing false allegations against the petitioner.

Susan Coonrod testified at trial that Mazey came to the petitioner's house and wanted to talk to the petitioner. Mazey informed the petitioner's wife that the victim had accused the petitioner of touching her. The petitioner's wife indicated several times that she did not believe it and asked Mazey to go get the victim so that she could hear the allegations herself. Mazey went and got the victim and brought her to the petitioner's trailer and said, "Tell her." When the victim asked, "Tell her what?" the victim's mother replied, "Tell her he touched you." Hr'g Tr., May 27, 2005, at 30-33.

When the entire incident is viewed in context, it could be argued that the victim's mother coerced the victim into bringing a false allegation against the petitioner. Rather, Mazey was simply responding to the request from the petitioner's wife to hear the allegations herself. Perhaps the audiotape would have clarified the tone of the conversation. However, the state courts' determination that cross-examination of Mazey adequately covered the point was not an unreasonable application of the prejudice component of *Strickland*.

2.

Next, the petitioner alleges that his counsel was ineffective for failing to cross-examine the victim's mother, Joyce Mazey, about various threats that she had made to the petitioner to report him to the police for sexually abusing her daughter, as well as her attempts to blackmail the petitioner with his prior criminal sexual conduct convictions. However, the record indicates that these points were covered by the questioning.

The jury heard evidence that Joyce Mazey was having an affair with the petitioner and this relationship was jeopardized by the impending relocation of the petitioner and his family. Trial counsel questioned Mazey about spying on the petitioner having sex with another woman in a trailer in the trailer park, which raised the implication that Mazey was jealous. Under defense counsel's questioning, Mazey also admitted that she allowed her daughter to continue visiting the petitioner's house after she had observed the petitioner engage in allegedly inappropriate behavior with her daughter. Mazey even acknowledged, in response to counsel's questions, that she was unsure whether she had actually seen the petitioner place his hands down her daughter's pants when they had been in the computer room on a prior occasion. And Mazey admitted that the victim had denied to her on two prior occasions that the petitioner had touched her inappropriately. Trial Tr., July 13, 2004, at 134-156.

Counsel later elicited testimony from Dr. Eugene Shatz that Mazey had admitted to him that there was jealousy between her and her daughter over the petitioner. Trial Tr., July 14, 2004, at 56. Counsel asserted in closing argument that after Mazey saw the petitioner have an affair with someone else, she was a "woman scorned" who had fabricated the allegations against the petitioner because she was angry that he was moving from the neighborhood. *Id.* at 124-25. Counsel developed the bias evidence against Mazey sufficient to give the jury adequate information to assess

her credibility, and he established her motive for encouraging her daughter to fabricate the allegations against the petitioner. Additional impeachment evidence would be considered cumulative "when the witness has already been sufficiently impeached at trial." *Davis v. Booker*, 589 F.3d 302, 309 (6th Cir. 2009) (quoting *Brown v. Smith*, 551 F.3d 424, 433-34 (6th Cir. 2008)). Because Mazey's credibility already had been impugned, the petitioner was not prejudiced by counsel's failure to confront Mazey with her alleged blackmail attempts.

There also was a strategic choice that had to be made about the blackmail evidence. Questioning Mazey about her threats to report the petitioner for sexually abusing her daughter would have brought out additional uncharged allegations of the petitioner sexually assaulting the victim. Any questions to Mazey about her decision to blackmail the petitioner about his prior criminal sexual convictions would have laid bare these prior convictions. Criticism of trial counsel's chosen strategy is valid only in hindsight, which, of course, does not amount to deficient performance under *Strickland*; there was "something to lose" by taking the path not traveled, and the petitioner has not rebutted the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689

Because the blackmail evidence would have been extremely damaging to petitioner, counsel was not ineffective for failing to use it to impeach Mazey. *Cf. United States v. Munoz,* 605 F.3d 359, 382 (6th Cir. 2010) (defense counsel's failure to introduce additional impeachment evidence from the witness's jailmate did not prejudice the defendant during his drug conspiracy prosecution and thus could not amount to ineffective assistance; counsel's failure to place incarcerated drug importer on the stand to testify on the defendant's behalf eliminated the risk that jury would associate defendant with drugs).

The petitioner next contends that counsel was ineffective for failing to object to the admission of Officer Amy Brondyke's redirect examination testimony concerning allegations made by the victim's cousin, Janey Miles, towards the petitioner. The petitioner contends that Brondyke's testimony violated the petitioner's right to confrontation, and the petitioner believes that counsel was ineffective for opening the door to this testimony.

The state court of appeals found no Confrontation Clause violation, and determined that trial counsel's decision to attack the investigator's report by questioning her about mishandling the complaint concerning Janey Miles was a reasonable tactical choice. Here's what happened. Investigator Brondyke apparently received some evidence from the victim in this case the petitioner had touched her cousin, Miles. Brondyke listed Miles as a "primary victim" in her report. When Brondyke followed up on that lead, Miles' mother would not allow her to be interviewed. Brondyke testified that the cousin prepared a brief statement regarding the allegations that the petitioner had touched her, which apparently did not disclose any criminality. Brondyke admitted on cross-examination that she did not believe the cousin was a victim. Counsel elicited admissions from Officer Brondyke that there was a serious mistake in her report, that she had not reviewed it before presenting it to the prosecutor, and that this mistake had never been corrected. Trial Tr., July 14, 2004, at 90-92.

This questioning paved the way for the prosecutor to ask Brondyke why she included those statements and characterizations in her report. Those redirect questions led to Brondyke's recounting the victim's statements to her about Miles. The petitioner says now that the choice to attack Brondyke and the quality of her investigation was not worth the consequence that flowed

from it: another story about the petitioner's alleged sexual misconduct with a young girl. However, in closing argument, trial counsel was able to argue that Janey Miles's mother "saved face by cutting it off at the start here. She's not a victim." *Id*. at 126. And the evidence supported trial counsel's argument that Brondyke had "botched" the whole investigation.

The Court cannot say that counsel's choice here was unreasonable. The questions were part of a legitimate strategy to cast doubt on the prosecution's case or on the witnesses who testified. *See Campbell v. United States*, 364 F.3d 727, 734-35 (6th Cir. 2004). As such, the Michigan courts' rejection of the petitioner's ineffective assistance of counsel claims was not an unreasonable application of *Strickland.* The petitioner is not entitled to habeas relief on his first claim.

## B.

In his second claim, the petitioner contends that his Sixth Amendment right to confront the witnesses against him was violated when Officer Brondyke was permitted to testify that Janey Miles and Lori Wilkinson, Miles's mother, told her that Janey "had been touched." The petitioner also petitioner contends that the Michigan courts improperly ruled that the petitioner had waived his confrontation right by opening the door to this testimony.

The respondent argues that the petitioner's Confrontation Clause claim is procedurally defaulted because he objected to the admission of Officer Brondyke's testimony in the trial court solely on state law grounds, and not as a violation of his Sixth Amendment right to confrontation. The state court of appeals so found, but it reviewed the claim on direct appeal under a plain error standard.

Procedural default is not a jurisdictional bar to review of the merits of an issue, *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005), and "federal courts are not required to address a

procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)).  The petitioner argues that his lawyer was ineffective for failing to preserve the constitutional issue surrounding Officer Brondyke's testimony.  He was not.  As explained below, the out-of-court statements related by Officer Brondyke were not offered for a testimonial purpose, so the evidence did not violate the Confrontation Clause.  Consequently, counsel was not ineffective for failing to object to its admission on this basis.  *See United States v. Johnson*, 581 F.3d 320, 328 (6th Cir. 2009) (finding that because admission of a tape recording did not violate the defendant's confrontation rights, counsel's failure to object to its admission did not constitute ineffective assistance of counsel).  Nonetheless, the Court deems it more efficient in this case to proceed directly to the merits of the petitioner's claim.

The Michigan Court of Appeals rejected the petitioner's claims on the following grounds:

> The prosecution elicited Brondyke's testimony for a non-hearsay purpose.  When the trial court denied defense counsel's objection to the introduction of Brondyke's testimony, it cautioned the jury that Brondyke's testimony regarding the contents of the cousin's statement was not being received "to establish whether there was or was not some touching of the second person."  Instead, on cross-examination, defense counsel had questioned Brondyke regarding why she had listed the cousin as a victim in her police report, eliciting from Brondyke that the cousin was not a victim and her report was in error.  Because defendant had initially questioned the credibility of Brondyke's report with regard to her decision to list the cousin as a victim, the trial court concluded that the prosecution's questions regarding what Brondyke learned from the cousin's statement were relevant to help the jury understand "her investigation and how she put together her report."  By asking Brondyke about what the cousin's statement indicated to her, the prosecution could rebut defendant's evidence that Brondyke's report was unreliable by showing that she had a reason for listing the cousin as a victim.  Because Brondyke's testimony was admitted for a non-hearsay purpose, we conclude that the trial court did not violate defendant's right to confrontation by admitting this testimony.

> Defendant further argues that the trial court violated his right to confrontation by finding that defense counsel "opened the door" to Brondyke's testimony and

-18-

consequently waived defendant's right to confrontation. We again find no violation of the right to confrontation. Indeed, as noted above, Brondyke's testimony was admitted for a non-hearsay purpose, and the trial court therefore did not violate defendant's right to confrontation by admitting the testimony.

*Coonrod,* 2006 WL 1290871, at *2-3.

In *Crawford v. Washington*, 541 U.S. 36 (2004), the Supreme Court held that out-of-court statements that are testimonial in nature are barred by the Confrontation Clause unless the witness is unavailable and the defendant had a prior opportunity for cross-examination, even if the trial court finds the statements to be otherwise reliable. Although the Supreme Court declined to "spell out a comprehensive definition of 'testimonial,'" the Court held that, at a minimum, the term covers "prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Id.* at 68.

The Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Id.* at 59 n.9; *see also Tennessee v. Street*, 471 U.S. 409, 414 (1985) (defendant's rights under the Confrontation Clause were not violated by introduction of an accomplice's confession for the non-hearsay purpose of rebutting defendant's testimony that his own confession was coercively derived from the accomplice's statement). "In some circumstances, out of court statements offered for the limited purpose of explaining why a government investigation was undertaken have been determined not to be hearsay." *United States v. Gibbs*, 506 F.3d 479, 486-87 (6th Cir. 2007) (quoting *United States v. Martin*, 897 F.2d 1368, 1371 (6th Cir. 1990)). Evidence that is provided merely by way of background or is offered only to explain how certain events came to pass or why law enforcement officers took the actions they did is not offered for the truth of the matter asserted, and thus cannot trigger a Confrontation Clause

violation. *See United States v. Warman*, 578 F.3d 320, 346 (6th Cir. 2009) (quoting *United States v. Cromer*, 389 F.3d 662, 676 (6th Cir. 2004)).

The state courts determined that Brondyke's testimony about what the victim told her concerning her cousin was not offered to prove that the cousin had been touched; it was offered to explain Officer Brondyke's investigation decisions and how she drafted her police report, which had been under attack by the defense. The scope of that testimony was limited by the trial court's instruction to the jury. Of course, it is possible that the jury considered Brondyke's rendition of her conversation with the victim as proof of other sexual misconduct despite the limiting instruction. However, under state evidence law, "[w]hen evidence which is admissible . . . for one purpose but not admissible . . . for another purpose" is presented, the court admits it subject to a limiting instruction given "upon request." Mich. R. Evid. 105. If the limiting instruction would be ineffective, then the evidence might be excluded. *See* Mich. R. Evid. 403. These decisions are committed to the sound discretion of the trial court. But "federal habeas corpus review does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)). Consequently, "[h]abeas review does not encompass state court rulings on the admission of evidence unless there is a constitutional violation." *Clemmons v. Sowders*, 34 F.3d 352, 357 (6th Cir. 1994) (citing *Fuson v. Jago*, 773 F.2d 55, 59 (6th Cir. 1985)). "When an evidentiary ruling is so egregious that it results in a denial of fundamental fairness, it may violate due process and thus warrant habeas relief." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).

It is possible that admission of evidence for a non-testimonial purpose might result in a Confrontation Clause violation if, for example, the non-testimonial purpose is insubstantial or a sham, and the hearsay effect of the evidence is so overwhelming as to render any limiting instruction

meaningless. This is not such a case. The avowed purpose of Brondyke's testimony was to fend off the defense's attack on her investigation, not to prove that the petitioner had sexually assaulted the victim or anyone else in this case. *Gibbs*, 506 F.3d at 486-87 (concluding that the agent's testimony was not hearsay when it relayed the words of another individual describing that the defendant, who was charged with being felon in possession of firearms, had long guns hidden in his bedroom because the testimony was offered as background evidence to show why the defendant's bedroom was searched, and not for its truth). The state court's decision that the Confrontation Clause was not implicated is not an unreasonable application of *Crawford*.

## C.

In his fourth claim, the petitioner contends that he was deprived of a fair trial under the Due Process Clause of the Fourteenth Amendment by the admission of Officer Brondyke's "highly inflammatory police testimony," referring to the account of the victim concerning her cousin, discussed above. The Sixth Circuit Court of Appeals has explained:

> "[E]rrors in the application of state law, especially rulings regarding the admission or exclusion of evidence, are usually not to be questioned in a federal habeas corpus proceeding." *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988). Generally, state-court evidentiary rulings cannot rise to the level of due process violations unless they "offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996) (quoting *Patterson v. New York*, 432 U.S. 197, 202 (1977)); *see also Spencer v. Texas*, 385 U.S. 554, 563-64 (1967).

*Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000). "Errors by a state court in the admission of evidence are not cognizable in habeas corpus proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994).

The Michigan Court of Appeals ruled that Officer Brondyke's testimony that Janey Miles had informed her that she had been touched by the petitioner was admissible and relevant to help the jury understand "her investigation and how she put together her report." Because Officer Brondyke's testimony was relevant and material to explain the background of her investigation, its admission was not so egregious as to deprive the petitioner of a fair trial.

### D.

The petitioner finally argues that his sentence was increased based upon facts neither proven to a jury beyond a reasonable doubt nor admitted by him. The petitioner argues, therefore, that the trial court judge violated his Sixth Amendment right to a trial by jury by using facts to score his sentencing guidelines that had not been submitted to a jury and proven beyond a reasonable doubt or admitted to by the petitioner. The petitioner believes that *Blakely v. Washington*, 542 U.S. 296 (2004), and *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), support his position. However, the claim that Michigan's sentencing guideline system, wherein judge-found facts are used to establish the minimum sentence of an indeterminate sentence, violates the Sixth Amendment has been foreclosed by the Sixth Circuit's decision in *Chontos v. Berghuis*, 585 F.3d 1000, 1002 (6th Cir.2009) ("[The petitioner] argues that the Michigan trial judge violated *Apprendi* by finding facts that raised his minimum sentence. But *Harris v. United States* tells us that *Apprendi'*s rule does not apply to judicial factfinding that increases a minimum sentence so long as the sentence does not exceed the applicable statutory maximum."). This Court is bound by that decision. Under state law, second-degree criminal sexual conduct is punishable by imprisonment for up to fifteen years. *See* Mich. Comp. Laws § 750.520c. Because the petitioner had been convicted as a fourth habitual offender, his sentence could be enhanced up to life in prison. *See* Mich. Comp. Laws § 769.12.

Because the petitioner's sentence fell within the statutorily-authorized maximum penalty, which was not enhanced by judicial factfinding, no Sixth Amendment violation occurred.

III.

The petitioner has not established that he is in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   August 31, 2010

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 31, 2010.

s/Teresa Scott-Feijoo
TERESA SCOTT-FEIJOO

---